(A. R. D. 39)

UNITED STATES *v.* NICHOLAS GAL (GLOBE SHIPPING CO., INC.)

Entry No. 859096/2.

Third Division, Appellate Term

(Decided March 18, 1954)

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.
*Eugene R. Pickrell* (*Michael Stramiello, Jr.*, of counsel) for the appellee.

Before EKWALL, JOHNSON, and OLIVER, Judges

JOHNSON, Judge:   The application for review of the decision of the trial court in Reap. Dec. 8119 involves the proper value applicable to a certain shipment of metal-covered paper, 3¾ inches wide, exported from Germany by the Aluminiumwerk Tscheulin, G. m. b. H. on May 16, 1938.   The paper in question was invoiced at U. S. $0.34 per pound, including boxes and packing, insurance, freight to German

port, consular charges, duty at 5 cents per pound, sea freight, and 15 per centum import duty. The merchandise was entered, however, on the basis of RM 0.7409 per pound, all dutiable charges included. In appraising the merchandise the appraiser indicated by the letters "C. P." that the values he found were based upon the cost of production, which was returned as RM 2.44 per kilo, net packed.

At the trial before Judge Rao, sitting in reappraisement, upon request of plaintiff's counsel, Government counsel conceded that there was no foreign value for the merchandise. He refused to concede, however, that there was not an export value, neither contending that there was nor that there was not an export value.

Nicholas Gal, the importer, Mrs. Jennie Nelkin, his secretary, and plaintiff's counsel testified on behalf of plaintiff. There were no witnesses for the Government. The evidence produced by these witnesses, together with documentary evidence introduced by the plaintiff, was clearly and concisely summarized in the decision of the trial court, and we do not think it necessary to again summarize the same.

The trial court observed that export value was disclaimed by the plaintiff on the theory that at the time of exportation of each of the shipments there involved neither such nor similar merchandise was freely offered for sale for exportation to the United States.

The Government, before the trial court, contended that the United States value had not been established because of the failure to include in the selling price the profit made by plaintiff upon the barter exportations of cotton and copper.

As to the reappraisement pending before this division of the court, the trial court observed that—

* * * Inherent in that appraisement, there is a presumption that the appraiser has found the nonexistence of foreign, export, and United States values. As one who challenges the correctness of the appraised values may do so in respect of any of the items entering into the true value of the merchandise as represented by the appraisement, while relying upon the presumption of correctness which attaches to all the other items, plaintiff may prove a United States value without assuming any burden of negativing export value. * * * On this issue, plaintiff has sustained his burden.

In connection with the proper United States value, the figures appearing in plaintiff's exhibit 2 were accepted as accurate, and the United States value was found by the trial court to be U. S. $0.2014 per pound.

When the application for review came on for argument before this division of the court, counsel for the Government, the appellant herein, stated that the real issue before this court is whether or not the decision below was based upon the supposition that it was unnecessary for the importer to prove the absence of an export value. That is to

say, according to the trial court, the importer was not required to "go through the preliminaries of eliminating the previous values before proceeding to United States value," and the trial court's theory, that because the merchandise was appraised on the basis of cost of production it became unnecessary for the court to rule out foreign value, was clearly, in the opinion of appellant, erroneous. Government counsel argued further that, as far as the importer was concerned, there was no more presumption of correctness of the appraised values and, in order to establish his case, the importer is required to proceed entirely *de novo* and submit evidence as to the nonexistence of the export value before he may establish the United States value.

We have examined the oral and documentary evidence with care and are of the opinion that the record as made, insofar as it affects the merchandise in the case at bar, fully sustains the United States value thereof, as returned by the trial court. As to the objection that an adequate profit was not shown in view of the cotton and copper barter transactions, the court cited as authority *International Forwarding Co., Inc.* v. *United States*, 4 Cust. Ct. 836, Reap. Dec. 4898, wherein it was held that the proceeds of such barter transaction as were used in the purchase of the merchandise there in question were entirely irrelevant to the issue.

There are many decisions of the courts holding that the presumptions of correctness attaching to the official action of collectors of customs and appraising officers may be attacked in part, or holding that such presumptions still prevail, unless every fact entering into the finding is established to be erroneous.

In the case of *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. (Customs) 1, T. D. 43309, the question was whether corset lacings, imported as a part of cotton and silk corsets, caused the articles to become dutiable as articles in part of braid rather than wearing apparel at a lower rate of duty. This court held that, at the time the corset lacings became a part of the corset, the lacings had been changed from the condition of braid by the addition of metal tags or tips to an article known by an entirely different name and which was designed for a specific use. The appellate court, however, was unable to agree with this court and, in reversing its decision, stated:

* * * Under the well-known rule, too well understood to require the citation of authorities, it will be presumed that the collector, in the absence of some showing to the contrary, found every fact to exist that was necessary to sustain his classification. This being the legal presumption, the collector found that the braid, as braid, had a separate entity before being made into laces. * * *

The case of *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75, involved certain presses, the function of which was to press about 32 per centum of the water out of cellulose acetate. The presses were classified as textile ma-

chinery. The plaintiff contended that they were dutiable at a lower rate under the provision for all other machines, inasmuch as the product, cellulose acetate, had uses other than in the manufacture of a textile material. In holding that the presses were classifiable as textile machines, the court stated:

> For the purposes of this case we must presume that such use is the principal use of the material passing through the machines. It is well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification.

In the case of *Golding Bros. Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 395, T. D. 46926, where the appraiser had returned the United States value as the proper value for the merchandise, the appellate court stated:

> In the instant case, therefore, when the local appraiser rejected the value at which the importer entered the merchandise, and held the United States value to be the dutiable value, *the presumption attached that he had found neither foreign nor export value to be satisfactorily ascertainable* and also that he had found United States value to be satisfactorily ascertainable.
>
> *In other words, the presumption of correctness legally implies that the local appraiser made findings as to all the elements requisite to determine that United States value was the correct dutiable value* and, in the trial before the single judge, sitting in reappraisement, the burden rested upon the importer to overcome the presumption by proofs upon all the material elements necessary to establish a foreign value. [Italics supplied.]

In the case of *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, an addition was made to the value by reason of the shrinkage during transit of certain musk pods. The appraiser there did not question the unit export value at which the merchandise was entered, but added thereto a certain percentage for shrinkage. The importer challenged the item of shrinkage and, by uncontradicted evidence, overcame the presumption of correctness attaching to such addition of the appraiser. The appellate court stated:

> * * * *Because, however, the importer had challenged that item only and no other item of the appraisement, the presumption of correctness as to all those others is not destroyed, and, therefore, they stand as presumptively correct.* It appears to us, as it did to the trial and appellate courts, that the appraiser found that the sum of $20 per ounce, which was the entered value, represented the export value of the merchandise pursuant to section 402 (d), *supra*. How he arrived at that value is of no concern. [Italics supplied.]

In the case of *United States* v. *Schroeder & Tremayne, Inc.*, and *James H. Rhodes & Co.*, 30 Cust. Ct. 590, A. R. D. 16, certain sponges were appraised at the export value thereof, as entered, plus certain percentages due to loss of weight on the voyage of importation. At the trial, evidence was offered tending to establish that the item of percentages of value added by the appraiser was not any part of the true value of the merchandise. The appellate division was of opinion

that such percentages had been established not to have been part of the value. However, the appellate division pointed out that it was the contention of Government counsel that the appellees had failed to establish that sponges in the condition of those imported were freely offered for sale in the principal market of Havana, Cuba, for home consumption or for export to the United States. As to such contention, the court stated:

This contention is contradicted by and is inconsistent with the appraisement herein upon which appellant relies. The appraisement being on the basis of export value, it presupposes the offer for sale in the foreign market of sponges such as or similar to those here involved for exportation to the United States. *Since the appraisement was on the basis of export value, it must be presumed that the foreign value, if one existed, was not higher than the export value.* * * * [Italics supplied.]

Since appellees herein challenged only the percentage advances in the appraisements, they were entitled to rely upon the presumption of correctness attaching to all other items of the appraisements, including the presumption that sponges, such as and similar to those imported, were freely offered for sale in the country of exportation in accordance with the terms of section 402 of the Tariff Act of 1930. * * *

The Government appealed to the Court of Customs and Patent Appeals, suit 4783, now pending, contending that the appraised values represented the proper export value of the merchandise as imported into the United States.

In the case of *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241, involving the reappraisement of certain bread-slicing machines, the appellate court stated:

When the appraisement first came before the trial court, it must be presumed that the appraisement and all items thereof constituted the true valuation of the merchandise and the burden rested upon the party who challenged its correctness or the correctness of any of its items to prove otherwise. Section 501, Tariff Act of 1930.

The only evidence as to this item of the allowance of 10 per centum discount which appears in the record is that of the witness Bunn who testified that in making the appraisement, he allowed 10 per centum for discount. * * *

*      *      *      *      *      *      *

It, therefore, appears that there is no evidence in the record as to the source from which the allowance of the item of 10 per centum discount was obtained, nor is anything offered by which the correctness of its allowance may be now attacked. Under the presumption of correctness established by said section 501, its correctness will be presumed. The Government had an opportunity to attack the item in the trial court. Having failed to do so, it is too late to do so now, in view of the condition of the record.

In view of the foregoing decisions, it is the opinion of this division of the court that when the appraiser found a value upon the basis of the cost of production it must be presumed that he followed the provisions of section 402 (a), as follows:

BASIS.—For the purposes of this Act the value of imported merchandise shall be—

    (1) The foreign value or the export value, whichever is higher;

    (2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

    (3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production.

In the appraiser's determination that the metal-covered paper was dutiable upon the basis of the cost of production, he first was required under the statute to find that neither the foreign value, the export value, nor the United States value could be satisfactorily ascertained. In attacking the action of the appraiser as to his cost of production valuation, the appellee overcame the presumption of correctness of the appraiser's action in returning such value by establishing, without contradiction, that there was a United States value. However, the negative findings of the appraiser as to the absence of a foreign or an export value were not questioned, and inasmuch as the finding of the appraiser that neither a foreign value nor an export value could be satisfactorily ascertained was equally necessary under the statute for the finding of a United States value, this court is of the opinion that the appraiser's negative finding as to the foreign or export value will stand as presumptively correct.

Upon the entire record in the pending reappraisement, we find as facts:

    (1) The merchandise consists of aluminum metal-covered paper exported from Germany in May 1938.

    (2) At the time of exportation thereof such or similar merchandise was not freely offered for sale for home consumption in Germany.

    (3) At the time of exportation thereof such or similar merchandise was not freely offered for sale in Germany for export to the United States.

    (4) At the time of exportation thereof such or similar merchandise was freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, in the ordinary course of trade at the following price, and the following charges were incurred which, deducted from said price, result in the United States value shown below.

| Description | .0095/105 mm |
|---|---|
| Price | $0.34 per pound |
| Profits and General Expenses | $0.0136 |
| Ad valorem duty | $0.051 |
| Specific duty | $0.05 |
| Sea freight | $0.007 |
| Insurance | $0.017 |
| United States value | $0.2014 per pound |

(5) There was no variation in the price at which such or similar merchandise was offered for sale for domestic consumption in the United States as a result of the quantities sold.

We conclude as a matter of law:

(1) That the proper basis for determining the value of the aluminum metal-covered paper in question is the United States value, and

(2) That the United States value of the aluminum metal-covered paper in question, as that value is defined in section 402 (e) of the Tariff Act of 1930, is as set out in finding of fact No. 4.

Judgment of the trial court is, therefore, in all respects affirmed. Judgment will be entered accordingly.